UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:  CASE NO.: **3:09-bk-06115-PMG**

ROBERT M. MAYHALL,
and MELISSA D. MAYHALL,
    Debtors.

---

ROBERT M. MAYHALL,  ADV. NO.:_____
and MELISSA D. MAYHALL,
    Plaintiffs,

vs.

DUVAL FEDERAL CREDIT UNION,
    Defendant.

---

## COMPLAINT PURSUANT TO 11 U.S.C. §506(a)

The Plaintiffs, ROBERT M. MAYHALL and MELISSA D. MAYHALL, by and through their undersigned attorney, sue Defendant, DUVAL FEDERAL CREDIT UNION, and state:

1. This is an action brought pursuant to 11 U.S.C. 506(a) to value collateral and determine the status of Defendant's lien and/or claim against property of Plaintiff.

2. Plaintiff is the owner of homestead property located at 2363 Egremont Drive, Orange Park, Clay County, Florida 32073. The legal description is as follows:

> Lot 16, WYNDGATE UNIT ONE, according to the plat thereof recorded in Plat Book 7, page 24, of the public records of Clay County, Florida.
> Parcel ID Number: **41-04-26-019701-000-00**

1

3. The purchase of the homestead was accomplished on July 18, 2007, by a promissory note in the amount of $235,800.00 and first mortgage executed by Plaintiff in favor of Defendant.

4. Thereafter, on August 20, 2007, Plaintiff entered into a second mortgage transaction with Defendant. Defendant loaned Plaintiff the principal sum of $25,000.00 to be secured by a second mortgage on the Plaintiff's homestead.

5. Section 506 of the Bankruptcy Code defines the secured and unsecured status of debts based upon the value of the underlying collateral. This Section provides in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. See: 11 U.S.C. § 506(a)

6. The value of the Plaintiff's homestead for the year 2009 was recently set by the Clay County Property Appraiser at $193,517.00 (See Exhibit "A" attached).

7. Further, a recent appraisal values the Plaintiff's homestead at $205,000.00 as of June 30, 2009. (See Exhibit "B" attached).

8. As of the date of filing of the Voluntary Petition, there remained a principal sum due of at least $231,308.00 (plus any applicable pay off charges) on the first mortgage loan on the Plaintiff's property.

9. Under the above provisions of 11 U.S.C. § 506(a), the second mortgage lien of Defendant is wholly unsecured and subject to removal and treatment as an unsecured claim in the Plaintiff's Chapter 13 Plan.

## RELIEF REQUESTED

Plaintiff requests that this Court:

A. Value the interest and any claim of Defendant (second mortgage only) in the Plaintiff's property at the replacement value of $0.00;

B. Strip off the lien of Defendant, by virtue of its second mortgage on the Plaintiff's property and treat Defendant as an unsecured creditor in this regard.

DATED this 28th day of August, 2009.

LAW OFFICE OF TODD W. HENRY

_____
Todd W. Henry, Esquire
Fla Bar #0077003
1555 Kingsley Avenue, Suite 405
Orange Park, FL 32073
(904) 264-6776 (Phone)
(904) 269-3354 (Fax)
Attorney for the Plaintiffs

## PLAINTIFFS' VERIFICATION

The statements made herein are true and correct to the best of our knowledge and belief:

_____     _____
ROBERT M. MAYHALL                                         MELISSA D. MAYHALL

# CCPAO
## Clay County Property Appraiser's Office

| RECENT SALES IN THIS AREA | PREVIOUS PARCEL / NEXT PARCEL | RETURN TO MAIN SEARCH PAGE | CLAY HOME |
|---|---|---|---|
| **OWNER NAME** | MAYHALL ROBERT M & MELISSA | **TODAY'S DATE** | August 24, 2009 |
| **MAILING ADDRESS** | 2363 EGREMONT DR | **PARCEL NUMBER** | 41-04-26-019701-000-00 |
| | ORANGE PARK, FL 32073 | **MILLAGE DISTRICT (RATE)** | ORANGE PARK (18.5348) |
| | | **ACREAGE** | 0000000.351 |
| | | **PROPERTY USAGE** | SINGLE FAMILY (000100) |
| **LOCATION ADDRESS** | 2363 EGREMONT DR | **PARCEL MAP** | Show Parcel Map |
| Generate Owner List By Radius | | 2007 RECORD CARD PRINT | 2008 RECORD CARD PRINT |

### 2009 PRELIMINARY VALUES

| JUST VALUE OF NON-AG LAND | LAND VALUE AGRICULTURAL | BUILDING VALUE | TOTAL MISC VALUE | CLASSIFIED VALUE | JUST VALUE | ASSESSED VALUE | EXEMPT VALUE | TAXABLE VALUE | HOME STEAD |
|---|---|---|---|---|---|---|---|---|---|
| 40,000 | 0 | 145,539 | 7,978 | 193,517 | 193,517 | 193,517 | 50,000 | 143,517 | Y |

The information listed in this table is the effect of the constitutional amendment passed on January 29, 2008.

| Maximum Save Our Homes Portability Amount | $0 |
|---|---|

### LAND INFORMATION

| LAND USE | NUMBER OF UNITS | UNIT TYPE | SEC-TWN-RNG |
|---|---|---|---|
| LLOC LT | 0000001.000 | LOT | 41-4-26 |
| **SHORT LEGAL** | LOT 16 WYNDEGATE UNIT 1 AS REC O R 2940 PG 2169 | | |

### BUILDING DATA

| BUILDING # | TYPE | TOTAL AREA | HEATED AREA | BED ROOMS | BATHS | EXTERIOR WALL | HEATING | COOLING | ACTUAL YEAR BUILT |
|---|---|---|---|---|---|---|---|---|---|
| Sketch Building 1 | SINGLE FAM | 2,666 | 1,748 | 4 | 2 | COMMON BRK | AIR DUCTED | CENTRAL | 1971 |

### MISCELLANEOUS DATA

| DESCRIPTION | LENGTH | WIDTH | UNITS | YEAR BUILT |
|---|---|---|---|---|
| FPL 1STY A | 0 | 0 | 1 UNITS | 1971 |
| POL-450 GN | 15 | 32 | 480 SQUARE FEET | 1981 |
| CONC 1/1300 | 0 | 0 | 940 SQUARE FEET | 1971 |
| SIDEWALK C | 3 | 7 | 21 SQUARE FEET | 1971 |
| WOOD P 6' | 0 | 0 | 200 LF | 1990 |
| PATIO CONC | 14 | 24 | 336 SQUARE FEET | 1975 |

### SALES DATA

| SALE DATE | BOOK/PAGE | PRICE | INSTRUMENT | QUALIFICATION | IMPROVED? (AT TIME OF SALE) | GRANTOR | GRANTEE |
|---|---|---|---|---|---|---|---|
| 07-18-2007 | 2940/2169 | 261,300 | WARRANTY DEED | QUALIFIED | YES | NONES ROBERT A III | MAYHALL ROBERT M & MELISSA |
| 03-07-2000 | 1850/878 | 152,500 | WARRANTY DEED | QUALIFIED | YES | GEER ROBIN B & RITA M A/K/A AGNEW | NONES ROBERT A III |
| 08-29-1994 | 1521/1183 | 117,000 | WARRANTY DEED | QUALIFIED | YES | JON A JOHNSON & SHARON | ROBIN B GEER & RITA M |
| 09-27-1990 | 1357/53 | 98,000 | WARRANTY DEED | QUALIFIED | YES | SECR'TY OF VET AFF | JOHNSON |

*Exhibit "A"*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 05-08-1990 | 1320/650 | 97,405 | CERTIFICATE OF TITLE | UNQUALIFIED | YES | RING | SECR'TY OF VET AFFS |
| 04-23-1990 | 1316/306 | 97,400 | CS | UNQUALIFIED | YES | RING | RESOLUTION TRUST COR |
| 01-20-1989 | 1207/43 | 120,300 | WARRANTY DEED | QUALIFIED | YES | JARVIS SR | RING |
| 07-15-1988 | 1160/203 | 1 | WARRANTY DEED | UNQUALIFIED | YES | JONES & FREEMAN | JARVIS |
| 12-01-1987 | 1109/702 | 126,600 | WARRANTY DEED | UNQUALIFIED | YES | | |
| 08-01-1985 | 879/702 | 109,500 | WARRANTY DEED | QUALIFIED | YES | | |
| 05-01-1985 | 869/340 | 104,500 | WARRANTY DEED | QUALIFIED | YES | | |

The Clay County Property Appraiser's Office makes every effort to produce the most accurate information possible. No warranties, expressed or implied, are provided for the data herein, its use or interpretation. The assessment information is from the last certified taxroll. All data is subject to change before the next certified taxroll. Website Updated: August 11, 2009

| RECENT SALES IN THIS AREA | PREVIOUS PARCEL / NEXT PARCEL | RETURN TO MAIN SEARCH PAGE | CLAY HOME |
|---|---|---|---|

© 2006 by the County of Clay, FL | Website design by qpublic.net

Exhibit "A" (cont)

# Uniform Residential Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| Field | Value |
|---|---|
| Property Address | 2363 Egremont Drive |
| City | Orange Park |
| State | FL |
| Zip Code | 32073 |
| Borrower | Robert M. & Melissa Mayhall |
| Owner of Public Record | Robert M. & Melissa Mayhall |
| County | Clay |
| Legal Description | Lot 16 WYNDEGATE AS REC OR 2940 PG 2169 |
| Assessor's Parcel # | 019701 000 00 |
| Tax Year | 2008 |
| R.E. Taxes $ | 3,261.32 |
| Neighborhood Name | Orange Park |
| Map Reference | 27260 |
| Census Tract | 0308.01 |
| Occupant | [X] Owner [ ] Tenant [ ] Vacant |
| Special Assessments $ | n/a |
| PUD | [ ] HOA $ n/a [ ] per year [ ] per month |
| Property Rights Appraised | [ ] Fee Simple [ ] Leasehold [ ] Other (describe) |
| Assignment Type | [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) determination of current market value. |
| Lender/Client | Robert M. Mayhall |
| Address | |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). MLS, public records

## CONTRACT

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.
n/a

Contract Price $ n/a    Date of Contract n/a    Is the property seller the owner of public record? [ ] Yes [ ] No    Data Source(s) n/a

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid. n/a    n/a

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban [X] Suburban [ ] Rural | | Property Values | [ ] Increasing [ ] Stable [X] Declining | | PRICE $(000) | AGE (yrs) | One-Unit | 80 % |
| Built-Up | [X] Over 75% [ ] 25-75% [ ] Under 25% | | Demand/Supply | [ ] Shortage [ ] In Balance [X] Over Supply | | 150 Low | 20 | 2-4 Unit | % |
| Growth | [ ] Rapid [X] Stable [ ] Slow | | Marketing Time | [ ] Under 3 mths [ ] 3-6 mths [X] Over 6 mths | | 400 High | 40 | Multi-Family | 15 % |
| Neighborhood Boundaries | Neighborhood is located east of Blanding Boulevard, west of US 17, south of Kingsley Avenue and north of College Avenue. | | | | | 210 Pred. | 25 | Commercial | 5 % |
| | | | | | | | | Other | % |

Neighborhood Description  See additional comments.

Market Conditions (including support for the above conclusions)  See additional comments.

## SITE

| Field | Value |
|---|---|
| Dimensions | 102 x 150 (SUBJECT TO SURVEY) |
| Area | .35 acres |
| Shape | mostly rectangular |
| View | neighborhood |
| Specific Zoning Classification | RS-2 |
| Zoning Description | residential low density |
| Zoning Compliance | [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) **site dimensions subject to survey |

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street asphalt | [X] | [ ] |
| Gas | [ ] | n/a | Sanitary Sewer | [X] | | Alley n/a | [ ] | [ ] |

FEMA Special Flood Hazard Area [ ] Yes [X] No    FEMA Flood Zone    FEMA Map #    FEMA Map Date

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No  If Yes, describe. No apparent adverse easements or other adverse conditions noted. Site dimensions taken from Clay County tax record and plat map. No survey was provided to the appraiser.

## IMPROVEMENTS

| GENERAL DESCRIPTION | FOUNDATION | EXTERIOR DESCRIPTION materials/condition | INTERIOR materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [X] Concrete Slab [ ] Crawl Space | Foundation Walls concrete slab (G) | Floors crpt/tile/lam( G) |
| # of Stories 1 | [ ] Full Basement [ ] Partial Basement | Exterior Walls brick (G) | Walls d-wall/panel(A) |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area 0.0000 sq.ft. | Roof Surface comp shingle (A) | Trim/Finish wood (G) |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish n/a % | Gutters & Downspouts aluminum (G) | Bath Floor ceramic tile (A) |
| Design (Style) contemporary | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type aluminum SH (A) | Bath Wainscot ceramic tile (A) |
| Year Built 1971 | Evidence of [ ] Infestation | Storm Sash/Insulated double pane | Car Storage [ ] None |
| Effective Age (Yrs) 20-30 | [ ] Dampness [ ] Settlement | Screens screens (G) | [X] Driveway # of Cars |
| Attic [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities [ ] WoodStove(s) # | Driveway Surface concrete |
| [X] Drop Stair [ ] Stairs | [ ] Other  Fuel electric | [X] Fireplace(s) # 1  [X] Fence wood | [X] Garage # of Cars 2 |
| [ ] Floor [ ] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck scrnd [X] Porch entry | [ ] Carport # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [X] Pool in-ground [ ] Other | [X] Att. [ ] Det. [ ] Built-in |

Appliances  [P] Refrigerator  [X] Range/Oven  [X] Dishwasher  [X] Disposal  [X] Microwave  [P] Washer/Dryer  [ ] Other (describe)

Finished area above grade contains:  8 Rooms  4 Bedrooms  2 Bath(s)  2,082 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  The improvements are in good overall condition with typical minor depreciation due to age noted. No major items of deferred maintenance noted. No functional or external obsolescence noted.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe.

Freddie Mac Form 70 March 2005    Produced using ACI software, 800.234.8727 www.aciweb.com    Fannie Mae Form 1004 March 2005
Page 1 of 6    1004 05 06290E

C:\Program Files\ACI32\REPORTS\1004-2363 Egremont.aci

Exhibit "B"

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| There are | | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | | | to $ | | |
| There are | | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | | | to $ | | |
| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
| Address | 2363 Egremont Drive<br>Orange Park | 2333 Stafford Drive<br>Orange Park | | 2331 Egremont Drive<br>Orange Park | | 3411 Shenandoah Drive W<br>Orange Park | |
| Proximity to Subject | | 0.06 miles E | | 0.03 miles N | | 3.03 miles WSW | |
| Sale Price | $ n/a | $ 225,000 | | $ 259,000 | | $ 217,500 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 94.82 sq. ft. | | $ 92.93 sq. ft. | | $ 107.73 sq. ft. | |
| Data Source(s) | | MLS # 456378 | | MLS # 416860 | | MLS # 464622 | |
| Verification Source(s) | | Clay County public records | | Clay County public records | | Clay County public records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | n/a | cash | | FHA | | VA | |
| Concessions | n/a | none known | | none known | | closing costs | -5,000 |
| Date of Sale/Time | n/a | 5-7-2009 | | 11-19-2008 | -15,000 | 2-19-2009 | -8,000 |
| Location | Orange Park | Orange Park | | Orange Park | | Orange Park | |
| Leasehold/Fee Simple | fee simple | fee simple | | fee simple | | fee simple | |
| Site | .35 acres | .33 acres | | .35 acres | | .37 acres | |
| View | neighborhood | neighborhood | | neighborhood | | neighborhood | |
| Design (Style) | ranch | ranch | | ranch | | ranch | |
| Quality of Construction | average | average | | average | | average | |
| Actual Age | 38 | 36 | | 37 | | 39 | |
| Condition | average-good | good | -11,000 | average-good | | average-good | |
| Above Grade Room Count | Total 8 / Bdrms 4 / Baths 2 | Total 8 / Bdrms 3 / Baths 2.5 | -4,000 | Total 9 / Bdrms 4 / Baths 2.5 | -4,000 | Total 7 / Bdrms 3 / Baths 2 | |
| Gross Living Area | 2,082 sq. ft. | 2,373 sq. ft. | -8,700 | 2,787 sq. ft. | -21,200 | 2,019 sq. ft. | 1,900 |
| Basement & Finished Rooms Below Grade | n/a | n/a<br>n/a | | n/a<br>n/a | | n/a<br>n/a | |
| Functional Utility | equal | equal | | equal | | equal | |
| Heating/Cooling | central | central | | central | | central | |
| Energy Efficient Items | average | average | | average | | average | |
| Garage/Carport | 2-car garage | 2-car garage | | 2-car garage | | 2-car garage | |
| Porch/Patio/Deck | screened patio | screened patio | | screened patio | | screened patio | |
| Features | in-ground pool | none | +8,000 | in-ground pool | | in-ground pool | |
| Net Adjustment (Total) | | [X] - $ | 15,700 | [X] - $ | 40,200 | [X] - $ | 11,100 |
| Adjusted Sale Price of Comparables | | Net Adj. -7.0%<br>Gross Adj. 14.1% $ | 209,300 | Net Adj. -15.5%<br>Gross Adj. 15.5% $ | 218,800 | Net Adj. -5.1%<br>Gross Adj. 6.9% $ | 206,400 |

[X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [X] did [ ] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) Northeast Florida MLS, Duval County public records.
My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) Northeast Florida MLS, Duval County public records.
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 7-18-2007 | no previous sales/ 1 year | no previous sales/ 1 yr | no previous sales/ 1 yr |
| Price of Prior Sale/Transfer | $261,300 | n/a | n/a | n/a |
| Data Source(s) | public records, MLS | public records, MLS | public records, MLS | public records, MLS |
| Effective Date of Data Source(s) | 6-2009 | 5-2009 | 11-2008 | 2-2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales  Subject previous warranty deed purchase by current owner.

Summary of Sales Comparison Approach. All sales located in surrounding neighborhoods and are similar ranch style homes. All sales adjusted for differences in condition, square footage and amenities. All sales considered reflective of current market in neighborhood. All sales are weighted in the comparison.

Indicated Value by Sales Comparison Approach $ 205,000
Indicated Value by: Sales Comparison Approach $ 205,000   Cost Approach (if developed) $ 0   Income Approach (if developed) $ ND
Subject is a typical ranch style home in the neighborhood in average to good overall condition. The Sales Comparison Approach reflects buyers and sellers behaviors in the marketplace and is considered the most reliable indicator of value.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 205,000
as of June 30, 2009  , which is the date of inspection and the effective date of this appraisal.

| URAR- Neighborhood Description: |
|---|

Subject neighborhood is a medium sized community containing better quality ranch and traditional style homes. The neighborhood is part of a larger Orange Park residential area of mixed vintage ranch and contemporary style homes. Neighborhood is convenient to local amenities via Blanding Boulevard and Kingsley Avenue. Shopping, services, schools, and employment centers are located within reasonable commuting times of 30 minutes or less. Homes in subject and surrounding neighborhoods offer above average appeal to the market, are generally adequately maintained, and typically of contemporary and ranch styling.

Additional Comments On Market Conditions:

Overall housing values continue to decline in the Jacksonville SMSA market area. The most recent quarterly data from FHFA (through March 2009) indicates a quarter to quarter 1.42 % decrease in overall market area housing prices, with a 9.68 % overall decrease from the first quarter 2008 through the first quarter 2009, indicating a declining market. Consequent to the identification of previous price declines in the area, a negative market adjustment is applied to comparable sales over 90 days old, and increased weighting is placed on the current listings used in the comparison. REO sales and short sales are not market adjusted as they represent below market value transactions. The effect of the current market conditions on the future marketability of the subject property is beyond the capability of the appraiser to predict objectively.
The most recent sales available of similar size and style in the surrounding neighborhood were selected for the comparison. The current very slow market pace severely limits the number of available comparable sales.
The current tight mortgage lending climate and the unavailability of mortgage money has led to extended marketing times and downward price pressures in most markets.

Comment On Intended Use/ Intended User:

The intended user of this report is the Lender / Client.
The intended use is to evaluate the property that is the subject of this appraisal for a determination of current market value, subject to the stated scope of work, purpose of the appraisal, reporting requirements of the appraisal form, and the definition of Market Value. No additional intended users are identified by the appraiser.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED [ ] REPRODUCTION OR [ ] REPLACEMENT COST NEW | OPINION OF SITE VALUE | = $ | |
|---|---|---|---|
| Source of cost data | Dwelling 2,082 Sq. Ft. @ $ | = $ | 0 |
| Quality rating from cost service     Effective date of cost data | Sq. Ft. @ $ | = $ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | |
| The cost approach is considered misleading for existing residential | Garage/Carport 818   Sq. Ft. @ $ | = $ | 0 |
| improvements and is not developed for this report. | Total Estimate of Cost-New | = $ | 0 |
| | Less   Physical   Functional   External | | |
| | Depreciation | = $( | 0) |
| | Depreciated Cost of Improvements | = $ | 0 |
| | "As-is" Value of Site Improvements | = $ | |
| Estimated Remaining Economic Life (HUD and VA only)   30 Years | INDICATED VALUE BY COST APPROACH | = $ | 0 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $              X Gross Rent Multiplier         = $         Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM) Although some homes may be rented, the majority of units are owner occupied, making the income approach inappropriate to the assignment.

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?   [ ] Yes [X] No   Unit type(s) [X] Detached [ ] Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal name of project
Total number of phases              Total number of units              Total number of units sold
Total number of units rented         Total number of units for sale         Data source(s)
Was the project created by the conversion of an existing building(s) into a PUD?  [ ] Yes [ ] No  If Yes, date of conversion.
Does the project contain any multi-dwelling units?  [ ] Yes [ ] No  Data source(s)
Are the units, common elements, and recreation facilities complete?  [ ] Yes [ ] No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  [ ] Yes [ ] No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Freddie Mac Form 70 March 2005           Produced using ACI software, 800.234.8727 www.aciweb.com           Fannie Mae Form 1004 March 2005
Page 4 of 6
1004_05 062906

C:\Program Files\ACI32\REPORTS\1004\2363 Egremont.aci

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Freddie Mac Form 70 March 2005                Produced using ACI software, 800.234.8727 www.aciweb.com                Fannie Mae Form 1004 March 2005
Page 5 of 6
1004_06 052905

C:\Program Files\ACI32\REPORTS\100\2363 Egremont.aci

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _(signed)_ | Signature |
| Name Mike Barbare, MBA, St. Cert. Res. REA RD 5322 | Name |
| Company Name Appraising The First Coast, LLC | Company Name |
| Company Address 120 Coastal Oak Circle | Company Address |
| Ponte Vedra Beach, FL 32082 | |
| Telephone Number 904-382-6452 | Telephone Number |
| Email Address mikebarbare@comcast.net | Email Address |
| Date of Signature and Report 07/01/2009 | Date of Signature |
| Effective Date of Appraisal June 30, 2009 | State Certification # |
| State Certification # RD5322 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State Florida | |
| Expiration Date of Certification or License 11-30-2010 | |

ADDRESS OF PROPERTY APPRAISED
2363 Egremont Drive
Orange Park, FL 32073

APPRAISED VALUE OF SUBJECT PROPERTY $ 205,000

LENDER/CLIENT
Name
Company Name Robert M. Mayhall
Company Address

Email Address

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection
☐ Did inspect interior and exterior of subject property
   Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection

Freddie Mac Form 70 March 2005     Produced using ACI software, 800.234.8727 www.aciweb.com     Fannie Mae Form 1004 March 2005
Page 6 of 6
1004_05 062908

Max F. Willerer, SRA

C:\Program Files\ACI32\REPORTS\10042363 Egremont.aci

# Uniform Residential Appraisal Report

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 2363 Egremont Drive Orange Park | 2866 Marion Court W Orange Park | | | | | |
| Proximity to Subject | | 3.27 miles SW | | | | | |
| Sale Price | $ n/a | | $ 185,000 | | $ | | $ |
| Sale Price/Gross Liv. Area | $ 0.00 sq.ft. | $ 98.77 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | MLS # 458151 | | | | | |
| Verification Source(s) | | Clay County public records | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | n/a | VA | | | | | |
| Concessions | n/a | closing costs | -4,500 | | | | |
| Date of Sale/Time | n/a | 5-28-2009 | | | | | |
| Location | Orange Park | Orange Park | | | | | |
| Leasehold/Fee Simple | fee simple | fee simple | | | | | |
| Site | .35 acres | .22 acres | | | | | |
| View | neighborhood | neighborhood | | | | | |
| Design (Style) | ranch | ranch | | | | | |
| Quality of Construction | average | average | | | | | |
| Actual Age | 38 | 35 | | | | | |
| Condition | average-good | average-good | | | | | |
| Above Grade Room Count | Total 8 / Bdrms 4 / Baths 2 | Total 7 / Bdrms 3 / Baths 2 | | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Gross Living Area 30.00 | 2,082 sq.ft. | 1,873 sq.ft. | 6,300 | sq.ft. | | sq.ft. | |
| Basement & Finished Rooms Below Grade | n/a | n/a n/a | | | | | |
| Functional Utility | equal | equal | | | | | |
| Heating/Cooling | central | central | | | | | |
| Energy Efficient Items | average | average | | | | | |
| Garage/Carport | 2-car garage | 2-car garage | | | | | |
| Porch/Patio/Deck | screened patio | enclosed patio | -3,000 | | | | |
| Features | in-ground pool | in-ground pool | | | | | |
| Net Adjustment (Total) | | [ ]+ [X]- | $ 1,200 | [X]+ [ ]- | $ 0 | [X]+ [ ]- | $ 0 |
| Adjusted Sale Price of Comparables | | Net Adj. -0.6% Gross Adj. 7.5% | $ 183,800 | Net Adj. 0.0% Gross Adj. 0.0% | $ 0 | Net Adj. 0.0% Gross Adj. 0.0% | $ 0 |
| ITEM | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
| Date of Prior Sale/Transfer | 7-18-2007 | no previous sales/ 1 yr | | | | | |
| Price of Prior Sale/Transfer | $261,300 | n/a | | | | | |
| Data Source(s) | public records, MLS | public records, MLS | | | | | |
| Effective Date of Data Source(s) | 6-2009 | 5-2009 | | | | | |

Summary of Sales Comparison Approach

Freddie Mac Form 70 March 2005 — Produced using ACI software, 800.234.8727 www.aciweb.com — Fannie Mae Form 1004 March 2005
1004_05 062905

C:\Program Files\ACI32\REPORTS\10042363 Egremont.aci

FLOORPLAN

| Borrower: Robert M. & Melissa Mayhall | | File No.: 2363 Egremont |
|---|---|---|
| Property Address: 2363 Egremont Drive | | Case No.: Mayhall |
| City: Orange Park | State: FL | Zip: 32073 |
| Lender: Robert M. Mayhall | | |



| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 2081.7 | 2081.7 |
| P/P | Screened Patio | 331.8 | 331.8 |
| GAR | Garage | 818.4 | 818.4 |
| Net LIVABLE Area | (Rounded) | | 2082 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 23.9 x 61.8 | | 1477.0 |
| 12.0 x 26.8 | | 321.6 |
| 14.9 x 19.0 | | 283.1 |
| 3 Items | (Rounded) | 2082 |

| Borrower: Robert M. & Melissa Mayhall | | File No.: 2363 Egremont |
|---|---|---|
| Property Address: 2363 Egremont Drive | | Case No.: Mayhall |
| City: Orange Park | State: FL | Zip: 32073 |
| Lender: Robert M. Mayhall | | |



FRONT VIEW OF
SUBJECT PROPERTY

Appraised Date: June 30, 2009
Appraised Value: $ 205,000



REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE

| Borrower: Robert M. & Melissa Mayhall | | File No.: 2363 Egremont |
|---|---|---|
| Property Address: 2363 Egremont Drive | | Case No.: Mayhall |
| City: Orange Park | State: FL | Zip: 32073 |
| Lender: Robert M. Mayhall | | |



Subject Pool Area



| | |
|---|---|
| Borrower: Robert M. & Melissa Mayhall | File No.: 2363 Egremont |
| Property Address: 2363 Egremont Drive | Case No.: Mayhall |
| City: Orange Park    State: FL | Zip: 32073 |
| Lender: Robert M. Mayhall | |



COMPARABLE SALE #1

2333 Stafford Drive
Orange Park
Sale Date: 5-7-2009
Sale Price: $ 225,000



COMPARABLE SALE #2

2331 Egremont Drive
Orange Park
Sale Date: 11-19-2008
Sale Price: $ 259,000



COMPARABLE SALE #3

3411 Shenandoah Drive W
Orange Park
Sale Date: 2-19-2009
Sale Price: $ 217,500

| | |
|---|---|
| Borrower: Robert M. & Melissa Mayhall | File No.: 2363 Egremont |
| Property Address: 2363 Egremont Drive | Case No.: Mayhall |
| City: Orange Park  State: FL | Zip: 32073 |
| Lender: Robert M. Mayhall | |



**COMPARABLE SALE #4**

2866 Marion Court W
Orange Park
Sale Date: 5-28-2009
Sale Price: $ 185,000

**COMPARABLE SALE #5**

Sale Date:
Sale Price: $

**COMPARABLE SALE #6**

Sale Date:
Sale Price: $

## LOCATION MAP

| Borrower: Robert M. & Melissa Mayhall | File No.: 2363 Egremont |
|---|---|
| Property Address: 2363 Egremont Drive | Case No.: Mayhall |
| City: Orange Park | State: FL  Zip: 32073 |
| Lender: Robert M. Mayhall | |




Subject Front View


Subject Rear View


Subject Street Scene


Extra Photo 1

Extra Photo 2

Extra Photo 3


Sales Comp. 1


Sales Comp. 2


Sales Comp. 3


Sales Comp. 4

Sales Comp. 5

Sales Comp. 6


Location Map



Location Map